1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   DONALD W. GRASMAN,              ) Case No. EDCV 14-1697-JPR
                                     )
12                   Plaintiff,      )
                                     ) **MEMORANDUM OPINION AND ORDER**
13             v.                    ) **AFFIRMING COMMISSIONER**
                                     )
14   CAROLYN W. COLVIN, Acting       )
     Commissioner of Social          )
15   Security,                       )
                                     )
16                   Defendant.      )
                                     )
17   _____)

18   **I.   PROCEEDINGS**

19        Plaintiff seeks review of the Commissioner's final decision

20   denying his applications for Social Security disability insurance

21   benefits ("DIB") and supplemental security income benefits

22   ("SSI").  The matter is before the Court on the parties' Joint

23   Stipulation, filed August 6, 2015, which the Court has taken

24   under submission without oral argument.  For the reasons stated

25   below, the Commissioner's decision is affirmed.

26   **II.  BACKGROUND**

27        Plaintiff was born in 1961.  (Administrative Record ("AR")

28   236.)  He completed 11th grade and worked as a tree trimmer,

                                     1

construction worker, and cleaner.  (AR 50-51, 252.)

On July 21, 2011, Plaintiff submitted applications for DIB and SSI, alleging that he had been unable to work since May 10, 2009, because of "Bipolar I and II," severe depression, posttraumatic stress disorder, attention deficit hyperactivity disorder, "degerated [sic] back disease," and "anger mgmt."  (AR 236, 247, 251.)  After his applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 100.)  A hearing was held on January 16, 2013, at which Plaintiff, who was represented by counsel, appeared, as did both a medical and a vocational expert.  (AR 58-63.)  The hearing was continued, however, because the medical expert had been unable to review Plaintiff's medical records.  (AR 60-62.)  Another hearing was held, on February 4, 2013, at which Plaintiff, who was represented by counsel, testified, as did both a medical and a vocational expert.  (AR 32-55.)  In a written decision issued February 19, 2013, the ALJ found Plaintiff not disabled.  (AR 12-24.)  On June 24, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept

2

as adequate to support a conclusion.  <u>Richardson</u>, 402 U.S. at
401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).
It is more than a scintilla but less than a preponderance.
<u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec.</u>
<u>Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether
substantial evidence supports a finding, the reviewing court
"must review the administrative record as a whole, weighing both
the evidence that supports and the evidence that detracts from
the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715,
720 (9th Cir. 1996).  "If the evidence can reasonably support
either affirming or reversing," the reviewing court "may not
substitute its judgment" for that of the Commissioner.  <u>Id.</u> at
720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social
Security benefits if they are unable to engage in any substantial
gainful activity owing to a physical or mental impairment that is
expected to result in death or has lasted, or is expected to
last, for a continuous period of at least 12 months.  42 U.S.C.
§ 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir.
1992).

A.   <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to
assess whether a claimant is disabled.  20 C.F.R.
§§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821,
828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first
step, the Commissioner must determine whether the claimant is
currently engaged in substantial gainful activity; if so, the

3

1   claimant is not disabled and the claim must be denied.

2   §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

3       If the claimant is not engaged in substantial gainful

4   activity, the second step requires the Commissioner to determine

5   whether the claimant has a "severe" impairment or combination of

6   impairments significantly limiting his ability to do basic work

7   activities; if not, the claimant is not disabled and the claim

8   must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

9       If the claimant has a "severe" impairment or combination of

10  impairments, the third step requires the Commissioner to

11  determine whether the impairment or combination of impairments

12  meets or equals an impairment in the Listing of Impairments

13  ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix

14  1; if so, disability is conclusively presumed.

15  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

16      If the claimant's impairment or combination of impairments

17  does not meet or equal an impairment in the Listing, the fourth

18  step requires the Commissioner to determine whether the claimant

19  has sufficient residual functional capacity ("RFC")[1] to perform

20  his past work; if so, he is not disabled and the claim must be

21  denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant

22  has the burden of proving he is unable to perform past relevant

23  work.  Drouin, 966 F.2d at 1257.  If the claimant meets that

24  burden, a prima facie case of disability is established.  Id.

25      If that happens or if the claimant has no past relevant

26  _____

27      [1] RFC is what a claimant can do despite existing exertional
    and nonexertional limitations.  §§ 404.1545, 416.945; see Cooper
28  v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 10, 2009, the alleged onset date. (AR 14.) At step two, he concluded that Plaintiff had severe impairments of cervical, thoracic, and lumbar myofascial strain, "left rotator cuff tendinitis strain," "bipolar II disorder," ADHD, and PTSD. (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing. (AR 15.) At step four, he found that Plaintiff had the RFC to perform medium work with additional restrictions. (AR 16.) Specifically, Plaintiff could lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday with normal breaks; reach and lift with his left upper extremity frequently but not continuously; occasionally climb ladders, ropes, or scaffolds; occasionally stoop, crouch, or crawl; and perform "simple repetitive nonpublic tasks." (<u>Id.</u>) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a tree trimmer, construction worker I, or night cleaner. (AR 22.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the

national economy: (1) mail clerk, DOT 209.687-026, 1991 WL 671813; (2) linen-room attendant, DOT 222.387-030, 1991 WL 672098; (3) laundry laborer, DOT 361.687-018, 1991 WL 672992; and (4) garment sorter, DOT 222.687-014, 1991 WL 672131.  (AR 22-23.) Each of the identified jobs was an unskilled job with a specific-vocational-preparation level of two.  (AR 23.)  Accordingly, the ALJ found Plaintiff not disabled.  (Id.)

**V.   DISCUSSION**

Plaintiff claims the ALJ erred in (1) assessing the opinions of his treating psychiatrist and the consultative examining psychiatrist, (2) assessing his mental RFC, (3) presenting the hypothetical to the VE, and (4) assessing his credibility.  (J. Stip. at 3.)  For the reasons discussed below, remand is not warranted.  The Court addresses Plaintiff's contentions in an order different from that in the Joint Stipulation.

A.   The ALJ Properly Assessed Plaintiff's Credibility

1.   Applicable law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986).  "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the

6

ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[2] Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (as amended); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).  The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment

---

[2] The Commissioner objects to the clear-and-convincing standard but acknowledges that her argument was rejected in Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014).  (J. Stip. at 32 n.13); see also Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (reaffirming Burrell).

1  or to follow a prescribed course of treatment; (3) the claimant's

2  daily activities; (4) the claimant's work record; and (5)

3  testimony from physicians and third parties.  <u>Rounds v. Comm'r</u>

4  <u>Soc. Sec. Admin.</u>, __ F.3d __, No. 13-35505, 2015 WL 7958642, at

5  *7 (9th Cir. Dec. 7, 2015) (as amended); <u>Thomas v. Barnhart</u>, 278

6  F.3d 947, 958-59 (9th Cir. 2002).  If the ALJ's credibility

7  finding is supported by substantial evidence in the record, the

8  reviewing court "may not engage in second-guessing."  <u>Thomas</u>, 278

9  F.3d at 959.

10              2.   <u>Relevant background</u>

11      In an undated disability report, Plaintiff indicated that he

12  stopped working on May 10, 2009, because "work was slow."  (AR

13  251.)  In response to a question asking if his medical conditions

14  caused him to make changes in his work activity, he answered,

15  "No."  (<u>Id.</u>)

16      At the hearing, Plaintiff testified that he had had mental-

17  health problems "kind of all my life" but was not diagnosed until

18  he was about 35 years old.  (AR 33.)  He testified that he was

19  first hospitalized for mental-health issues in February 2002

20  (<u>id.</u>) and that he was last hospitalized in June 2012 because he

21  was "really depressed," had "thoughts of worthlessness," and

22  "tried to hurt [him]self" (AR 35).[3]  Plaintiff testified that in

23  the past week, his most severe symptoms "despite [his]

24  _____

25      [3] Similarly, Plaintiff's treating psychiatrist stated in a
    December 18, 2012 letter that Plaintiff had been hospitalized in
26  "mid-2012" (AR 456), but no record of such a hospitalization
    exists.  A June 13, 2012 treatment note from the Riverside County
27  Department of Mental Health indicated that although Plaintiff was
    anxious because he had been out of medication for the past week,
28  he denied any suicidal or assaultive ideation.  (AR 445-46.)

medication" were depression, anxiety, and inability to be around
crowds.  (AR 34.)   Except for a few occasions when he forgot his
appointment or his doctor was out, he always had and took his
medication.   (AR 34-35.)

When asked whether he would be able to do a "simple
repetitive type of task for an eight-hour shift" sitting alone at
a table, Plaintiff testified that he had never done that kind of
work before and that he would probably be "[r]eally nervous."
(AR 37.)   He testified that having someone with him to make sure
he knew what he was doing would probably make him more nervous.
(Id.)

Plaintiff testified that he had problems with his back.  (AR
45.)   At most, he could sit for about an hour and stand for about
30 minutes.  (AR 45-46.)   He testified that it hurt to lift
"probably 30 pounds sometimes" if he had to pick it up from the
ground.  (AR 47.)

Plaintiff testified that although he had a driver's license
and car, he "hardly ever" drove.  (AR 37.)   He did, however,
drive to the hearing, which was about 35 miles round-trip.   (AR
37-38.)   His drive to the hearing was the longest trip he had
taken in the last few years.  (AR 38.)   He testified that he
"sometimes" went grocery shopping and that when he did, his
mother usually drove him.   (Id.)   He had been living with his
mother since the August before the hearing, and before that, he
was homeless.   (Id.)   Plaintiff testified that he stopped
drinking in 1999 and stopped using drugs "in probably '87."   (AR

9

1   39.)[4]

2           3.   <u>Analysis</u>

3       The ALJ found that although Plaintiff's "medically

4   determinable impairments could reasonably be expected to cause

5   the alleged symptoms," his "statements concerning the intensity,

6   persistence and limiting effects of these symptoms" were "not

7   entirely credible" (AR 18) and "less than fully credible" (AR

8   19).  Plaintiff challenges the ALJ's determination as to his

9   alleged physical impairments only.  (<u>See</u> J. Stip. at 29-30

10  (challenging ALJ's findings as to allegations of disabling neck,

11  shoulder, and back pain).)  As discussed below, the ALJ provided

12  clear and convincing reasons for discounting Plaintiff's

13  allegations of disabling physical impairments.

14      As an initial matter, Plaintiff argues that the ALJ erred by

15  failing to identify "specific statements" he found not credible.

16  (<u>Id.</u> at 25.)  The ALJ is required to "specifically identify the

17  testimony [from a claimant] she or he finds not to be credible

18  and . . . explain what evidence undermines the testimony."

19  <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th

20  Cir. 2014) (citing <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th

21  Cir. 2001)); <u>see also</u> <u>Brown-Hunter</u>, 806 F.3d at 493; SSR 96-7p,

22  1996 WL 374186, at *4 (July 2, 1996) (decision "must be

23  sufficiently specific to make clear to the individual and to any

24  subsequent reviewers the weight the adjudicator gave to the

25  individual's statements and the reasons for that weight").  Here,

26  _____

27      [4] In October 2011, Plaintiff reported that he had last used
    alcohol six months earlier and "illegal drugs" in 1995.  (AR
28  364.)

the ALJ summarized Plaintiff's testimony that he had lower-back
problems, could sit for an hour and stand for 30 minutes, had
pain when lifting 30 pounds, and had problems lifting his hands
over his head.  (AR 17.)  The ALJ then identified similar
allegations of physical limitations from Plaintiff's function
report and a third-party function report, noting that both were
completed by Plaintiff's girlfriend and finding that "[t]he
repetition of [Plaintiff's] subjective complaints through his
girlfriend does not make them any more credible."  (Id.)  In
summarizing specific statements from Plaintiff's hearing
testimony and the function reports and making this initial
finding, the ALJ specifically identified which of Plaintiff's
subjective complaints he found not credible.  See Lindsley v.
Comm'r Soc. Sec. Admin., No. 3:12-cv-0552-SU, 2013 WL 2250369, at
*4 n.2 (D. Or. May 22, 2013) (finding that ALJ adequately
identified discredited testimony when he summarized claimant's
hearing testimony and incorporated that discussion into
credibility analysis), aff'd, 592 F. App'x 653 (9th Cir. 2015);
Treichler, 775 F.3d at 1103 (ALJ's analysis "need not be
extensive" as long as he "provide[s] some reasoning in order for
[the court] to meaningfully determine whether the ALJ's
conclusions were supported by substantial evidence").

     The ALJ found that Plaintiff's credibility was "highly
suspect" because of the "discrepancy" between his complaints of
pain recounted above and the "objective medical evidence."  (AR
17; see also AR 18 (finding credibility "diminished" because
allegations were "greater than expected in light of the objective
evidence of record").)  Indeed, although a May 2009 MRI of

11

Plaintiff's lumbar spine (AR 315-16) and a January 2012 x-ray of his cervical spine (AR 406) showed disc herniation and other degenerative changes, clinical findings from the October 25, 2011 consultative orthopedic examination were inconsistent with allegations of disabling pain.  For example, Plaintiff had a normal gait without the use of any assistive device and rose from a chair and walked across the room without difficulty.  (AR 375.) Although he was unable to walk on tiptoes and heels, he had no weakness in his ankle flexors and extensors, and his general motor strength was within normal limits.  (AR 375-76.)  He showed no signs of muscle atrophy or spasm in either his upper or his lower extremities.  (AR 375.)  Straight-leg raising was negative in both legs in both sitting and supine positions.  (AR 376.) Although moving his neck was painful, Plaintiff had a full range of motion, and Spurling's test was negative bilaterally.[5]  (Id.) And although Hawkins and Neer tests[6] were mildly positive for Plaintiff's left shoulder, supporting a diagnosis of mild rotator-cuff tendinitis, they were negative for his right shoulder.  (AR 375-76.)  Accordingly, the examining physician concluded, "[a]lthough [Plaintiff] notes right shoulder pain, there was nothing on examination today to substantiate a

---

[5] The Spurling test is used to evaluate nerve-root impingement in the cervical spine.  See Stedman's Medical Dictionary 1961 (28th ed. 2005).

[6] The Neer and Hawkins-Kennedy tests are used to diagnose impingements or tears in the rotator cuff.  See Physical Therapist's Guide to Rotator Cuff Tear, Am. Physical Therapy Ass'n, http://www.moveforwardpt.com/symptomsconditionsdetail. aspx?cid=95bd746b-b25f-46f5-8373-fb56c9f6b46a (last updated Nov. 2, 2011).

12

diagnosis." (AR 376.)   The ALJ was entitled to consider the
lack of objective medical evidence in assessing Plaintiff's
complaints of pain and his credibility.   See Burch v. Barnhart,
400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical
evidence cannot form the sole basis for discounting pain
testimony, it is a factor that the ALJ can consider in his
credibility analysis."); Carmickle v. Comm'r, Soc. Sec. Admin.,
533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the
medical record is a sufficient basis for rejecting the claimant's
subjective testimony."); Lingenfelter, 504 F.3d at 1040 (in
determining credibility, ALJ may consider "whether the alleged
symptoms are consistent with the medical evidence").

       The ALJ also discredited Plaintiff's testimony because he
had "not received the type of medical treatment one would expect
for a totally disabled individual" (AR 17) — that is, he received
"routine and conservative treatment since the alleged onset date"
(AR 18).  The "lack of more aggressive treatment," the ALJ found,
suggested that Plaintiff's "symptoms and limitations were not as
severe as he alleged."  (Id.)  Indeed, as discussed below, except
for brief treatment with injections and physical therapy in 2009
— some of which was before the alleged onset date — Plaintiff was
treated only with prescription pain medication for his alleged
back, neck, and shoulder pain.

       From February to December 2009, Plaintiff saw a primary-care
physician regularly for back pain.  (AR 304-10.)  From February
to April 2009, which was before the alleged onset date, Plaintiff
apparently received three injections (AR 309), which did not help
(AR 308), but the record contains notes from only one of the

injections (AR 317-18).  In August 2009, Plaintiff reported that
six sessions of physical therapy "helped some" but his back pain
was "still bad."  (AR 306.)  The record, however, contains no
evidence of such treatment.

After December 2009, Plaintiff did not complain of or
receive treatment for neck, shoulder, or back pain again until
two years later, December 2011, when he saw a new primary-care
physician.  (AR 403.)  He saw that physician sporadically after
his initial visit — three times in seven months — to refill his
pain medication.  (AR 402 (Jan. 2012), 440 (Mar. 2012), 435 (July
2012).)  Further, although a physician's assistant recommended
that Plaintiff be referred to a pain-management specialist for
further treatment, he "refused" the referral "upon check-out."
(AR 402.)

That Plaintiff was treated with mostly pain medication and
did not pursue further injections or physical therapy was a clear
and convincing reason for discrediting his allegations of
disabling pain.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040
(9th Cir. 2008) (that claimant "did not seek an aggressive
treatment plan" undermined allegations of disabling impairment);
id. at 1039 (ALJ may discount claimant's testimony in light of
"unexplained or inadequately explained failure to seek treatment
or to follow a prescribed course of treatment"); SSR 96-7p, 1996
WL 374186, at *7 (claimant's statements "may be less credible if
the level or frequency of treatment is inconsistent with the
level of complaints"); Martinez v. Colvin, No. CV 13-6741-SH,
2014 WL 2533784, at *3 (C.D. Cal. June 5, 2014) (ALJ properly
discounted claimant's testimony based on conservative treatment

14

when no physician recommended surgery and claimant was treated with "pain management" and epidural injections); <u>Walter v. Astrue</u>, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of medication, physical therapy, and injection).

In sum, the ALJ provided clear and convincing reasons for finding Plaintiff not credible. Because those findings were supported by substantial evidence, this Court may not engage in second-guessing. <u>See</u> <u>Thomas</u>, 278 F.3d at 959. Plaintiff is not entitled to remand on this ground.

> B.   <u>The ALJ Properly Assessed the Findings and Opinions of the Treating and Examining Psychiatrists</u>

Plaintiff contends the ALJ erred in assessing the findings and opinions of treating psychiatrist Christopher Fichtner and consultative examining psychiatrist Romualdo Rodriguez. (J. Stip. at 3-8, 15-18.) He also argues that the ALJ should have developed the record further by requesting more information from Dr. Fichtner. (<u>Id.</u> at 6-8.) For the reasons discussed below, remand is not warranted.

> 1.   <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. <u>Id.</u>

15

1    This is true because treating physicians are employed to

2 cure and have a greater opportunity to know and observe the

3 claimant.  <u>Smolen</u>, 80 F.3d at 1285.  If a treating physician's

4 opinion is well supported by medically acceptable clinical and

5 laboratory diagnostic techniques and is not inconsistent with the

6 other substantial evidence in the record, it should be given

7 controlling weight.  §§ 404.1527(c)(2), 416.927(c)(2).  If a

8 treating physician's opinion is not given controlling weight, its

9 weight is determined by length of the treatment relationship,

10 frequency of examination, nature and extent of the treatment

11 relationship, amount of evidence supporting the opinion,

12 consistency with the record as a whole, the doctor's area of

13 specialization, and other factors.  §§ 404.1527(c)(2)-(6),

14 416.927(c)(2)-(6).

15    When a treating or examining physician's opinion is not

16 contradicted by other evidence in the record, it may be rejected

17 only for "clear and convincing" reasons.  <u>See</u> <u>Carmickle</u>, 533 F.3d

18 at 1164 (citing <u>Lester</u>, 81 F.3d at 830-31).  When it is

19 contradicted, the ALJ must provide only "specific and legitimate

20 reasons" for discounting it.  <u>Id.</u> (citing <u>Lester</u>, 81 F.3d at 830-

21 31).  Furthermore, "[t]he ALJ need not accept the opinion of any

22 physician, including a treating physician, if that opinion is

23 brief, conclusory, and inadequately supported by clinical

24 findings."  <u>Thomas</u>, 278 F.3d at 957; <u>accord</u> <u>Batson v. Comm'r of</u>

25 <u>Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

26          2.  <u>Relevant background</u>

27    Dr. Fichtner was Plaintiff's treating psychiatrist at the

28 Riverside County Department of Mental Health beginning in

16

December 2009.  (AR 335, 456.)  On October 26, 2011, he completed
a Narrative Report (Adult) form.  (AR 381.)  In it, he indicated
diagnoses of bipolar II disorder, ADHD, and PTSD.  (<u>Id.</u>)  He
stated that Plaintiff had "chronic, disabling depression with
suicidality."  (<u>Id.</u>)  Although Plaintiff was receiving treatment
for all three of his diagnoses, he was "still not in full
remission," his prognosis was "guarded," and he was to "continue
to be monitored for intermittent suicidality."  (<u>Id.</u>)  Dr.
Fichtner opined that the "stress sensitivity" of Plaintiff's
condition rendered him "unable to work."  (<u>Id.</u>)  He also believed
that Plaintiff's memory was moderately impaired, although his
judgment was not impaired at all.  (<u>Id.</u>)  Dr. Fichtner opined
that Plaintiff could not "maintain a sustained level of
concentration," "sustain repetitive tasks for an extended
period," or "adapt to new or stressful situations."  (<u>Id.</u>)  He
indicated that Plaintiff could not interact appropriately with
strangers, coworkers, or supervisors.  (<u>Id.</u>)  He also opined that
Plaintiff could not complete a 40-hour workweek without
decompensating.  (<u>Id.</u>)

In a letter dated December 18, 2012, Dr. Fichtner stated
that Plaintiff had responded "fairly well to treatment with a
combination medication regimen, but intermittent medication
access problems and a problematic environmental situation (he is
currently homeless, and has been without any income for a long
time) have worsened his stress level."  (AR 456.)  He stated that
Plaintiff had been hospitalized twice since he "last documented
his disabling mental illness": in October 2011 and "mid-2012."
(<u>Id.</u>)  Dr. Fichtner stated, "I believe he has been hospitalized

17

1  for mental illness at least 4 times in total." (_Id._)

2      The ALJ gave "little weight" to Dr. Fichtner's opinion

3  because it was "brief, conclusory, and inadequately supported by

4  clinical findings." (AR 20.) He also found that it was

5  "inconsistent with the medical evidence as a whole." (_Id._) As

6  to Dr. Fichtner's statement that Plaintiff could not work a 40-

7  hour workweek without decompensating, the ALJ found that it had

8  "no probative value" and rejected it. (_Id._)

9      On October 7, 2011, Dr. Rodriguez performed a consultative

10  psychiatric examination of Plaintiff. (AR 362.) He ruled out

11  PTSD but diagnosed ADHD and "[p]olysubstance dependence

12  supposedly in full sustained remission." (AR 367.) As to

13  Plaintiff's prognosis, Dr. Rodriguez concluded that "as long as

14  [he] is properly treated for his ADHD, depression, and any PTSD

15  he may have he can easily recover from his symptoms within 12

16  months." (_Id._) Dr. Rodriguez opined that Plaintiff could

17  "understand, remember, and carry out _simple_ one- or two-step job

18  instructions" but not "detailed and _complex_ instructions." (AR

19  368 (emphasis in original).) Plaintiff was "[s]lightly limited"

20  in his ability to relate to and interact with supervisors,

21  coworkers, and the public; adapt to the stresses common to the

22  work environment; maintain regular attendance in the workplace

23  and perform work activities on a consistent basis; and perform

24  work activities without special or additional supervision. (_Id._)

25  He was "[m]oderately limited" in his ability to maintain

26  concentration, attention, persistence, and pace. (_Id._)

27      The ALJ gave "great weight" to Dr. Rodriguez's opinion

28  because he had "personally observed and examined" Plaintiff and

18

his opinion was consistent with his objective clinical findings. (AR 19-20.)   The ALJ noted that "Dr. Rodriguez assessed functional limitations that are essentially the same as those included in the residual functional capacity assessment herein." (AR 19.)

### 3.   Analysis

#### a.   *Dr. Fichtner*

As an initial matter, Plaintiff fails to establish that the ALJ had a duty to develop the record further by requesting more information from Dr. Fichtner.   It is true that an ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."   Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.").   But it nonetheless remains Plaintiff's burden to produce evidence in support of his disability claim.   See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (as amended). Moreover, the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."   McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010) (as amended May 19, 2011) (citation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, the record was not ambiguous or inadequate.   Dr. Fichtner's conclusion that Plaintiff was unable to work was clear, and Plaintiff's counsel confirmed at the hearing that the

case file contained all of Plaintiff's mental-health records.
(See AR 35, 42); see McLeod, 640 F.3d at 884 (ALJ had no duty to
request more information from treating physicians because
"substantially all of their medical records throughout the time
they treated [claimant] were before the ALJ" and "[t]here was
nothing unclear or ambiguous about what they said").   Further,
Plaintiff's mental-health records contained treatment notes from
other practitioners besides Dr. Fichtner, including a clinical
psychologist, providing additional foundation for evaluating Dr.
Fichtner's opinion.   (See, e.g., AR 347-57, 453-54.)

In any event, the ALJ developed the record by ordering a
consultative examination by a psychiatrist (AR 362-68) and taking
testimony from a medical expert, who reviewed all the treatment
records and asked Plaintiff questions regarding his
hospitalizations and ability to do repetitive work (AR 33-37).
For these reasons, the record was sufficient to evaluate Dr.
Fichtner's opinion and Plaintiff's disability claim, and the ALJ
therefore had no duty to develop it further.   See Siple v.
Astrue, No. EDCV 09-35 PA (FFM), 2010 WL 3833819, at *3 (C.D.
Cal. Sept. 28, 2010) (finding that record was neither ambiguous
nor inadequate when ALJ "had available to him opinions of the
board certified state agency examining psychiatrist, the board
certified non-examining psychiatrist, and the consultative
psychiatric examiner").

The ALJ gave "little weight" to Dr. Fichtner's opinion that
Plaintiff could not work a 40-hour workweek without
decompensating, maintain a sustained level of concentration,
perform repetitive tasks for an extended period, adapt to new or

stressful situations, or interact appropriately with strangers, coworkers, or supervisors.  (AR 20.)  This opinion was contradicted by Dr. Rodriguez, the consultative examining psychiatrist, who assessed that Plaintiff could work under certain conditions and was only slightly limited in mental functioning except for a moderate limitation in maintaining concentration.  (AR 368.)  Thus, the ALJ was required to give only specific and legitimate reasons supported by substantial evidence for discounting Dr. Ficthner's opinion, see Carmickle, 533 F.3d at 1164, which he did.

As to Dr. Fichtner's statement that Plaintiff could not work a 40-hour workweek without decompensating, the ALJ found that it had "no probative value" and rejected it.  (AR 20.)  He found such a conclusion was not entitled to controlling weight because it was "an opinion on an issue reserved to the Commissioner." (Id.)  Indeed, to the extent the statement was an opinion that Plaintiff was disabled or unable to work, the ALJ properly rejected it.  See §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p, 1996 WL 374183, at *5 (treating-source opinions that person is disabled or unable to work "can never be entitled to controlling weight or given special significance").

As for Dr. Fichtner's opinion generally, the ALJ accorded it little weight because it was "brief, conclusory, and inadequately supported by clinical findings." (AR 20.)  The section of the form for assessing Plaintiff's mental functioning presented only "Yes" or "No" choices, and the preprinted clinical criteria that

21

Dr. Fichtner circled — for example, depression, anxiety, suicidal ideation, isolation, apathy, and social withdrawal — did not by themselves adequately explain why he assessed such extreme limitations.  (See id.)  Dr. Fichtner's sole additional comments at the bottom of the form were that Plaintiff had "chronic, disabling depression with suicidality" and that the "stress sensitivity" of Plaintiff's condition rendered him "unable to work."  (Id.)  Such conclusory statements were inadequate to support the limitations he assessed.  See Molina, 674 F.3d at 1111 (ALJ may "permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions" (alterations and citation omitted)); Batson, 359 F.3d at 1195 ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by . . . objective medical findings").

Further, as the ALJ noted, Dr. Fichtner did not record many clinical findings in his treatment notes, and those findings he did record did not support his October 26, 2011 findings.  For example, on February 9, 2010, although Dr. Fichtner noted that Plaintiff was depressed and angry and had "negative thoughts" and feelings of worthlessness, he also "want[ed] to work," had normal, goal-directed thoughts, was alert and oriented, and had normal judgment and insight.  (AR 320.)  On September 13, 2011, all Dr. Fichtner did was note on a Change of Diagnosis form that he was adding a diagnosis of ADHD "b[ecause] of h[istory] consistent [with] it"; he did not record any clinical findings.  (AR 358.)  Unlike the clinical psychologist (AR 353-55) and consultative psychiatrist (AR 365-66), Dr. Fichtner apparently

did not perform formal mental-status examinations or conduct
other similar diagnostic tests.  Thus, as the ALJ noted, Dr.
Fichtner "primarily summarized in the treatment notes
[Plaintiff's] subjective complaints, diagnoses, and treatment,
but he did not provide medically acceptable clinical findings to
support the functional assessment."  (AR 20.)  This was a proper
basis for discounting Dr. Fichtner's opinion.  See
§§ 404.1527(c)(3), 416.927(c)(3) (more weight given "[t]he more a
medical source presents relevant evidence" and "[t]he better an
explanation" it provides to support its opinion); Connett v.
Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's
opinion properly rejected when treatment notes "provide[d] no
basis for the functional restrictions he opined should be imposed
on [claimant]"); Thomas, 278 F.3d at 957 ("The ALJ need not
accept the opinion of any physician, including a treating
physician, if that opinion is . . . inadequately supported by
clinical findings.").

     The ALJ also discounted Dr. Fichtner's findings and opinion
because they were "inconsistent with the medical evidence as a
whole."  (AR 20.)  Indeed, his October 26, 2011 findings were
inconsistent with those of Dr. Rodriguez, who had examined
Plaintiff only a few weeks before, on October 7.  (AR 362.)  At
that examination, Plaintiff did not have any suicidal, homicidal,
or paranoid ideation, and although his mood was depressed and
irritable, his affect was polite, serious, and relaxed, and he
did "not necessarily look sad."  (AR 365.)  In addition, he could
perform the mental tasks given to him, including serial threes
and simple math problems, and he could follow the examiner's

conversation.  (AR 366.)  Moreover, except for a hospitalization
on October 27, 2011 (AR 359), treatment records from fall 2011 on
showed that Plaintiff was "stable" on medication with no side
effects (AR 452), and he had normal speech and thought processes,
good eye contact, responsive interaction, good insight and
judgment, and fair impulse control, and he was alert and oriented
to person, place, time, and purpose (AR 354-55).

     As for Dr. Fichtner's statement in his December 2012 letter
that Plaintiff was "currently homeless" (AR 456), it was wrong,
as the ALJ noted: Plaintiff testified at the hearing that he had
been living with his mother since August 2012 (AR 38).  Further,
Dr. Fichtner's statement that Plaintiff had been hospitalized for
mental illness "at least 4 times in total" (AR 456), to the
extent he meant four times since the alleged onset date, was also
inconsistent with the record, which contains evidence of
hospitalizations only in December 2009 and October 2011 (AR 322-
24, 359).

     Thus, the ALJ's determination that Dr. Fichtner's findings
and opinion were inconsistent with the record was specific and
legitimate and supported by substantial evidence.  See
§§ 404.1527(c)(4), 416.927(c)(4) (more weight given "the more
consistent an opinion is with the record as a whole"); Batson,
359 F.3d at 1195 ("an ALJ may discredit treating physicians'
opinions that are conclusory, brief, and unsupported by the
record as a whole . . . or by objective medical findings").

                    b.   *Dr. Rodriguez*

     The ALJ gave "great weight" to Dr. Rodriguez's opinion.  (AR
16.)  Plaintiff does not object to that finding generally but

                              24

1  contends that the ALJ failed to explain why he allegedly rejected
2  one of Dr. Rodriguez's supposed limitations: that Plaintiff was
3  restricted to "simple one or two-step job instructions." (AR 368
4  (emphasis in original); J. Stip. at 15-18.) Plaintiff argues
5  that in "rejecting" that part of Dr. Rodriguez's opinion, the ALJ
6  was required to give specific and legitimate reasons and failed
7  to do so. (J. Stip. at 17-18.) But no such limitation existed.
8  Rather, Dr. Rodriguez found that Plaintiff could do "simple one
9  or two-step job instructions" but not "detailed and complex
10 instructions"; he did not limit Plaintiff to only simple, one- or
11 two-step instructions. (AR 368 (emphasis in original).) The ALJ
12 incorporated that portion of Dr. Rodriguez's opinion into his RFC
13 determination by finding that Plaintiff was limited to "simple
14 repetitive nonpublic tasks," a limitation well within the range
15 prescribed by Dr. Rodriguez of what Plaintiff could and could not
16 do. (AR 16; see also AR 19 (noting that Dr. Rodriguez's
17 functional assessments were "essentially the same" as those in
18 RFC determination).) The ALJ properly accorded great weight to
19 Dr. Rodriguez's opinion because he had "personally observed and
20 examined" Plaintiff and his assessments were consistent with his
21 independent clinical findings. (AR 19-20); see Tonapetyan, 242
22 F.3d at 1149 (finding that examining physician's "opinion alone
23 constitutes substantial evidence, because it rests on his own
24 independent examination of [claimant]"); Andrews v. Shalala, 53
25 F.3d 1035, 1041 (9th Cir. 1995) (opinion of nontreating source
26 based on independent clinical findings may itself be substantial
27 evidence).

28          Plaintiff is not entitled to remand on this ground.

                                25

1

C.   The ALJ Properly Assessed Plaintiff's Mental RFC

2

1.   Applicable law

3   A district court must uphold an ALJ's RFC assessment when

4   the ALJ has applied the proper legal standard and substantial

5   evidence in the record as a whole supports the decision.   Bayliss

6   v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).   The ALJ must

7   consider all the medical evidence in the record and "explain in

8   [his] decision the weight given to . . . [the] opinions from

9   treating sources, nontreating sources, and other nonexamining

10   sources."   §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); see also

11   §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual

12   functional capacity based on all the relevant evidence in your

13   case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)

14   (RFC must be "based on all of the relevant evidence in the case

15   record").   In making an RFC determination, the ALJ may consider

16   those limitations for which there is support in the record and

17   need not consider properly rejected evidence or subjective

18   complaints.   See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC

19   determination because "the ALJ took into account those

20   limitations for which there was record support that did not

21   depend on [claimant's] subjective complaints"); Batson, 359 F.3d

22   at 1197 (ALJ not required to incorporate into RFC any findings

23   from treating-physician opinions that were "permissibly

24   discounted").

25

2.   Analysis

26   Dr. Rodriguez opined that Plaintiff could do "simple one or

27   two-step job instructions" but not "detailed and complex

28   instructions" (AR 368 (emphasis in original)), and the ALJ found

26

in his RFC determination that Plaintiff was limited to "simple repetitive nonpublic tasks" (AR 16).  Plaintiff contends that the RFC failed to incorporate Dr. Rodriguez's assessment.  (J. Stip. at 20-21.)  As discussed earlier, however, the RFC's limitation of simple, repetitive, nonpublic tasks was well within the range of functional capacity assessed by Dr. Rodriguez.  It was also consistent with the functional assessments by the nonexamining state-agency psychiatrists who reviewed Plaintiff's medical records.[7]  (See AR 370-72, 399-400, 430-31.)  On initial consideration, Dr. R. Paxton indicated on a Mental Residual Functional Capacity Assessment form that Plaintiff's ability to "carry out very short and simple instructions" was not significantly limited and his ability to "carry out detailed instructions" was moderately limited.  (AR 370.)  Dr. Paxton opined that Plaintiff could do "simple level work at two hour intervals in a non public setting." (AR 372; see also AR 400 (indicating in case analysis that Plaintiff could do nonpublic, simple, repetitive tasks).)  On reconsideration, another state-agency psychiatrist affirmed that assessment.  (AR 431.)  The RFC limitation was also consistent with the opinion of the medical expert, who testified at the hearing not only that Plaintiff could do "simple, repetitive work" but also that "occasional detailed or complex work would be possible." (AR 43-44.) Because the RFC determination was consistent with the opinions of

---

[7] The electronic signatures of the state-agency physicians include a medical-specialty code of 37, indicating psychiatry. (AR 400, 431); see Program Operations Manual System (POMS) DI 24501.004, U.S. Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/lnx/0424501004.

Dr. Rodriguez, the state-agency psychiatrists, and the medical expert, it was supported by substantial evidence.[8]  See Young v. Comm'r of Soc. Sec., 594 F. App'x 914, 916 (9th Cir. 2014) (finding mental RFC supported by substantial evidence because it was consistent with limitations assessed by examining clinical neuropsychologist and consultative psychiatrist).

Plaintiff is not entitled to remand on this ground.[9]

---

[8] Moreover, the RFC's limitation of simple, repetitive tasks was consistent with the unskilled, SVP-level-two jobs identified by the ALJ in his step-five determination.  (AR 23); see SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (specific-vocational-preparation (SVP) level of one to two indicates unskilled work); SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) ("The basic mental demands of . . . unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions . . . ."); §§ 404.1568(a), 416.968(a) (unskilled work involves "simple duties that can be learned on the job in a short period of time").

[9] Plaintiff also contends that the ALJ's hypothetical to the VE was incomplete and he therefore erred in relying on the VE's testimony.  (J. Stip. at 21-22); see Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (if hypothetical to VE does not reflect all of claimant's limitations, then VE's testimony "has no evidentiary value to support a finding that the claimant can perform jobs in the national economy").  As discussed, the ALJ's RFC determination adequately incorporated Dr. Rodriguez's assessment.  Because his hypothetical to the VE included the same limitations as those in the RFC determination — including "simple repetitive tasks; non-public" (AR 51) — he properly relied on the VE's testimony in finding Plaintiff capable of performing other work (AR 22-23).  Thus, Plaintiff is not entitled to remand on this ground.

## VI.   CONCLUSION

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 17, 2015

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[10] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

29